IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD ROMANELLI,

                Plaintiff,                         OPINION AND ORDER

     v.

                                             3:07-cv-00019-bbc

DALIA SULIENE, CHRISTOPHER KUHL,
DARREL KUHL and STEVEN ROWE,[1]

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      While plaintiff Ronald Romanelli was incarcerated at the Columbia County jail, he reported to defendants Dalia Suliene (a doctor at the jail) and Christopher Kuhl (a jail sergeant) that he had Crohn's disease and was experiencing related symptoms such as lost weight, stomach pains and up to 20 bowel movements a day.  In addition, he complained to Christopher Kuhl that he could not see and had "constant headaches" as a result of not having eyeglasses.  Defendant Steven Rowe was the sheriff for Columbia County while

------

     [1] Plaintiff's complaint identifies Christopher Kuhl and Darrel Kuhl as "Captain Kuhl" and "Deputy Kuhl."  I have amended the caption to include their full names as identified by defendants in their summary judgment materials.

1

plaintiff was at the jail; Darrel Kuhl was the jail captain.

In this civil rights action brought under 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment, the parties agree on two basic facts: (1) plaintiff never completed the grievance process for either of his medical complaints; and (2) he never received medical treatment for either of his conditions. The issue in dispute with respect to both facts is why. Defendants say that plaintiff failed to follow the grievance policy even after defendant Christopher Kuhl explained how it worked and that plaintiff refused treatment because he did not want to be charged for it, as required by jail policy. Plaintiff says that he had no notice of the proper grievance process and that defendants refused to provide treatment even though he could not afford to pay for it.

Defendant Suliene and defendants Steven Rowe, Darrell Kuhl and Christopher Kuhl have filed separate motions for summary judgment, which are now before the court. Because there are genuine issues of fact regarding whether plaintiff exhausted all "available" remedies under 42 U.S.C. § 1997(e) and whether defendants Suliene and Christopher Kuhl failed in their constitutional duty to take reasonable measures to provide plaintiff with medical care they knew he needed, I must deny the motions for summary judgment with respect to plaintiff's claims against them. However, I will grant the motions with respect to defendants Darrell Kuhl and Steven Rowe because plaintiff has failed to adduce any evidence that they were personally involved in the alleged constitutional violations.

2

From the proposed findings of fact and the record, I find the following facts to be undisputed.

UNDISPUTED FACTS

A. Medical Problems

1. Interactions with Doctor Dalia Suliene

From May 21, 2006 until August 3, 2006, plaintiff Ronald Romanelli was incarcerated as a pretrial detainee at the Columbia County jail in Wisconsin. (Plaintiff is currently incarcerated at the Green Bay Correctional Institution in Green Bay, Wisconsin.) On May 22, 2006, plaintiff met with defendant Dalia Suliene, a physician who provides medical services to prisoners at the jail through a contract with the county. Plaintiff told defendant Suliene that he had been diagnosed with Crohn's disease, which Suliene knows is an inflammatory bowel disease characterized by inflammation of the digestive tract. Suliene did not question plaintiff's reported diagnosis.

Symptoms of Crohn's disease include abdominal pains, frequent stools, dehydration, malnutrition, weight loss and anemia. Plaintiff told Suliene that he had been prescribed Asacol for his disease and that certain foods exacerbate his condition. He did not report any current symptoms. (Because Crohn's disease is an inflammatory condition, patients may be asymptomatic for significant periods of time and may not require medical treatment during

3

that time.)

Defendant Suliene gave plaintiff two options for obtaining his Asacol: (1) have someone bring his medication to the jail; or (2) submit a new request for a prescription, for which plaintiff would have to pay. The jail has a policy that requires prisoners to pay for much of their own medical care. However, under this policy, medication should be provided even if a prisoner does not have enough money in his account to pay for it. In that case, the prisoner owes the money to the jail. (The parties dispute whether Suliene told plaintiff that he could not get a new prescription unless he paid for it in advance or whether she told him, consistent with jail policy, the cost would be debited to his jail account if he did not have enough money. Defendants say that plaintiff had a balance in his prison account "during most of his detention at Columbia County jail," but they proposed no facts regarding the amount of that balance and they do not dispute plaintiff's averment that he did not have enough to pay for the necessary treatment.) Defendant Suliene wrote in her notes that plaintiff chose to have someone bring his medication to the jail. (Plaintiff denies that he told her this.) In her written instructions to the jailer, Suliene ordered a "self-select diet" for plaintiff. (Neither party proposes any facts regarding what a "self-select" diet is and neither side suggests that such a diet is helpful in treating Crohn's disease.)

(The parties dispute whether plaintiff submitted a health services request on June 17, 2006, in which he asked to be seen "for the Crohn's issue." However, plaintiff adduces no

4

evidence that he reported symptoms in the request or that any of the defendants saw the request.)

In a letter dated July 7, 2006, plaintiff wrote that he had Crohn's disease, that he was having 10 to 20 bowel movements a day and that his weight was "starting to diminish from lack of protein and food." In addition, plaintiff wrote, "I can't afford meds right now, but I need help." He requested a diet plan that he said he had followed while at the Sauk County jail. After reading the letter, defendant Suliene met with plaintiff on July 10. Suliene weighed plaintiff at 173 pounds. (Plaintiff is 5' 11". The parties dispute whether plaintiff weighed 180 pounds or between 190 and 195 pounds when he was arrested.) Plaintiff told Suliene that he had not taken his medication since he was incarcerated and he could not afford to buy any. (The parties characterize the rest of the conversation somewhat differently. Defendants say plaintiff "focused the discussions . . . on his request for two trays of food at each meal and a sack lunch at night time"; plaintiff says he "reiterated all [his] symptoms.")

Defendant Suliene believed that plaintiff was experiencing the symptoms he reported and gave plaintiff the option of taking two blood tests, but she informed him that he would have to pay for the tests. (The parties dispute what defendant Suliene told plaintiff about the blood tests. According to plaintiff, she told him that he would have to pay for the blood tests before he received them and that the tests would not confirm whether he had the

5

disease so it would be a "waste of money" to have them done.)  Plaintiff did not submit to the blood tests and Suliene did not order any treatment for plaintiff's reported symptoms.

Plaintiff told the jail nurse (and plaintiff says defendant Suliene as well) that recent blood test results could be obtained from the Sauk County jail (where plaintiff had been incarcerated previously) and he filled out a medical release for that purpose.  The same day, the nurse requested plaintiff's records from the Sauk County jail.

On July 14, defendant Suliene learned that the Sauk County jail did not have any blood work for plaintiff.  She took no action.

2.  Interactions with Sergeant Christopher Kuhl

On July 12, 2006, defendant Christopher Kuhl (a jail sergeant) received a medical complaint from plaintiff.  (On June 17, 2006, plaintiff had submitted a medical request regarding new glasses, which was seen by the jail nurse. However, plaintiff adduces no evidence that defendant Kuhl or any of the other defendants saw this request.)  In the July 12 letter, plaintiff wrote:

> I got a disease called Crohn's disease . . . . It's a very serious disease that on a very common basis, I get very sick (mind blowing pains in my stomach) and have at times up to twenty stools per day. . . . Since I've been here I've gotten no medical care . . . . I can't afford to pay . . . I've already requested double trays at breakfast, lunch and dinner and also a bag lunch before bed.  It's all about the protein and the large mass of food mixed in with a little dose of steroids (which are cheap).  Worked excellent my whole seven month stay at Sauk Co jail, it was their doctor who

6

recommended this diet. . .  This shouldn't be looked at lightly.  This simple solution is gonna better my health.

> My second issue is my glasses, which got broken the night I came into custody. I've got no way o[f] getting [n]ew ones.  I've got very little contact with the outside world.  And I really need them for court and seeing all together.  I don't need a[n] examination, I just need the glasses . . .. Right now I suffer from constant headaches from constantly straining all day long.

Defendant Christopher Kuhl met with plaintiff the same day.  With respect to plaintiff's request for eyeglasses, plaintiff asked Kuhl whether he would have to pay for them. (The parties dispute defendant Kuhl's answer to this question.  According to Kuhl, he explained to plaintiff that the jail would cover the "initial cost" of the glasses if plaintiff could not afford them, but Kuhl would seek reimbursement from plaintiff.  Plaintiff denies that Kuhl told him that the jail would pay for glasses initially.  The parties also dispute whether Kuhl told plaintiff that he could submit a medical request for new glasses.)

After speaking with plaintiff about his Crohn's disease (neither side proposed any facts about the specifics of that discussion), Kuhl spoke with the jail nurse.  The nurse told Kuhl that he was waiting for a response from the Sauk County jail regarding records for plaintiff's blood work.  Kuhl returned to plaintiff, informing him of the reason for the delay.

Plaintiff wrote two more letters to defendant Christopher Kuhl during the next week. In his first letter, dated July 13, plaintiff wrote that "nothing has happened with my requests about my Crohn's disease or my glasses."  He explained that "his digestive system is so fast"

7

and his disease was "out of his control."  He asked that "some progress [be] put into helping me fulfill my desired and essential needs."

In his second letter, dated July 18, plaintiff wrote that he had not gotten any "cooperation" in resolving his problems regarding glasses and Crohn's disease:  "I just feel like I'm not being looked at seriously by this facility . . . [I]n my eyes it's cruel and unusual punishment to be deprived of proper medical treatment."  He noted that "we talked about the chain of command last time" and that he would "write to the jail administrator maybe" if Kuhl failed to help, but he did not want to do that because he "would feel [like he was] trying to manipulate."

Defendant  Kuhl did not respond to these letters.  On July 22, after he spoke to the jail nurse again, he told plaintiff that the Sauk County jail did not have his blood work. (The parties dispute whether Kuhl told plaintiff that he would need to submit to blood work before he received treatment and that he would have to contact health services to schedule the blood work.)  Plaintiff did not submit another medical request.

3.  Plaintiff leaves the jail

Plaintiff met with defendant Suliene on August 2 to discuss his Crohn's disease. (According to plaintiff, defendants knew on August 2 that plaintiff was being released into state custody the following day.)  Plaintiff's weight was between 174 and 175 pounds.

8

Plaintiff told Suliene that he had not been receiving enough food and was experiencing "watery, green" bowel movements as many as 20 times a day.  In response to his complaints, defendant Suliene ordered jail staff to take plaintiff's weight four times a week and submit records for review.  In addition, she directed staff to seek plaintiff's permission to obtain his records from the Reedsburg Clinic, where plaintiff told Suliene he had received treatment and a prescription.

The jail nurse obtained plaintiff's authorization on August 3, the same day he was released from the jail.

### 4.  Darrell Kuhl and Steven Rowe

Defendant Darrell Kuhl is the jail administrator; defendant Steven Rowe is the sheriff of Columbia County and custodian of the prisoners at the jail.  Neither of these defendants was aware of plaintiff's specific medical complaints while he was incarcerated at the Columbia County jail.  (Plaintiff attempts unsuccessfully to put this fact into dispute with an averment that he sent letters to both defendants.  Kuhl and Rowe deny that they received any letters from plaintiff, but even if I were to assume they did, plaintiff fails to identify the specific contents of these letters, making it impossible to infer reasonably that either defendant was aware that plaintiff had a serious medical need.)

9

B.  Grievance Procedure

During the time of plaintiff's incarceration, the Columbia County jail had a grievance procedure that required prisoners to submit grievances to a jail sergeant on an inmate general request form.  If the sergeant responded in a way that did not satisfy the prisoner, an appeal could be made to the jail lieutenant and then to the jail administrator.

Plaintiff did not receive a written copy of the grievance procedure, which is part of a  staff manual that is not provided to prisoners.  Instead, during intake, plaintiff received a document called "Columbia County Jail Inmate Rules and Procedures," which says nothing about filing grievances.  Under a section called, "Medical Care," prisoners are instructed "to inform jail staff of a medical problem and submit a request to see the doctor nurse." (The parties dispute whether defendant Kuhl told plaintiff that grievances must be submitted on request forms and that plaintiff's grievances "should be submitted to [Kuhl] for resolution before submitting an appeal to anyone higher in the chain of command such as Lieutenant Stilson, Jail Administrator/Captain Kuhl, or Sheriff Rowe.")

Plaintiff did not use request forms to file his grievances and he did not appeal defendant Kuhl's decisions to the jail lieutenant or administrator.

OPINION

A.  Exhaustion of Administrative Remedies

10

The Columbia County jail grievance procedure requires prisoners to use request forms when filing grievances and to file appeals with the jail lieutenant and jail administrator. It is undisputed that plaintiff did not follow this procedure with respect to any of the claims in this lawsuit.

In the ordinary case, plaintiff's failure would require dismissal of his claims. Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit in federal court. This means that the prisoner must "properly take each step within the administrative process," Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005). See also Woodford v. Ngo, – U.S. – , 126 S. Ct. 2378, 2386 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.")

Section 1997e(a) contains one qualification that is relevant to this case: a prisoner does not have to exhaust administrative remedies if they are not "available" to him. In determining whether a particular remedy was "available" to a prisoner who failed to exhaust, the Court of Appeals for the Seventh Circuit has held that the key question is whether the

11

prisoner or an official was at fault for the failure to complete the grievance process properly. Kaba v. Stepp, 458 F.3d 678, 684-87 (7th Cir. 2006).  Thus, the court has held on multiple occasions that a prisoner had no available remedies when prison officials prevented him from exhausting his administrative remedies.  Dole v. Chandler,  438 F.3d 804, 809 (7th Cir. 2006)(no available remedy when prison officials lost grievance); Dale v. Lappin, 376 F.3d 652, 654-56 (7th Cir. 2004) (refused to provide grievance forms); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (refused to decide grievance).

In this case, plaintiff says that he was unaware of the grievance procedure because prisoners do not receive a copy of it and he never received notice of it otherwise.  The written procedures he did receive say only that "[i]t is the inmate's responsibility to inform the jail staff of a medical problem and submit a request to see the doctor or nurse." Romanelli Aff., dkt. #48, exh. 010.  This is a little different from Dole, Dale and Lewis because jail officials did not physically prevent plaintiff from completing the grievance process, they simply failed to disclose the existence of the procedures.  It may be that officials would have told him how to properly file a grievance had he asked.  The court of appeals has not considered whether it is the officials' responsibility to tell the prisoner about the procedures or the prisoner's responsibility to ask about them, but the consensus among federal courts appears to be that the burden is on the officials.  E.g., Russell v. Unknown Cook County, Sheriff's Officers, 2004 WL 2997503 at *4-5 (N.D. Ill. Dec. 27, 2004)

(defendants must establish that they gave plaintiff notice of grievance procedure); Burgess v. Garvin, 2004 WL 527053 at *5 (S.D.N.Y. Mar. 16, 2004) (holding that "procedural channels . . . not made known to prisoners . . . are not an 'available' remedy in any meaningful sense. . . . [Congress] cannot have meant that prisoners would be expected to exhaust remedies of which they were kept entirely ignorant."); Hall v. Sheahan, 2001 WL 111019 at *2 (N.D. Ill. Feb 2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an 'available' administrative remedy."). I agree that this is the better view.

Section 1997e(a) is primarily for the benefit of prison administrators: to give them notice of a problem and an opportunity to solve it before being haled into court. Porter v. Nussle, 534 U.S. 516, 524-25 (2002); Booth v. Churner, 532 U.S. 731, 737 (2001). Thus, it makes sense to place the onus on officials to inform prisoners of the procedure. If officials want to use § 1997e(a) to obtain dismissal of lawsuits filed without using the administrative remedy process, they must at least tell the prisoner what the process is. It would be unfair to require the prisoner to conduct his own investigation, particularly because in many cases he would be unaware of his obligation to do so. It would also create an unfortunate incentive on prison officials to conceal the grievance procedure, a result that would be inconsistent with the purposes of both § 1997e(a) and § 1983. Goebert v. Lee County, –

13

F.3d – ,  2007 WL 4458122, *8 (11th Cir. 2007) ("If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along.")

Defendant Kuhl says that he discussed the grievance procedure with plaintiff, but I must accept plaintiff's verison of the facts at this stage of the proceedings.  Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489 (7th Cir. 2007).  In any event, the specific facts defendants propose in support of their version do not establish that plaintiff failed to exhaust his administrative remedies.  Jones v. Bock, 127 S. Ct. 910 (2007) (failure to exhaust administrative remedies is affirmative defense that must be proven by defendants).  According to Kuhl, he told plaintiff that he should submit complaints to him (Kuhl) "before submitting an appeal to anyone higher in the chain of command."  Kuhl Aff., dkt. #33, at ¶11.  That is a far cry from telling plaintiff that the jail had a grievance procedure in place that required him to file multiple appeals before he could file a lawsuit.  Rather, a reasonable interpretation of Kuhl's alleged statement is simply that plaintiff shouldn't go over Kuhl's head when making a complaint.

In their reply brief, defendants argue that plaintiff conceded in a letter he wrote in July 2006 and in his response brief that he knew about the proper grievance procedure, but that simply isn't true.  The letter confirms only that plaintiff and Kuhl "talked about the

14

chain of command" and that plaintiff was thinking of writing the jail administrator, but he was reluctant to do so because he did not want it to look like he was "trying to manipulate" the system. Christopher Kuhl Aff., exh. 6, dkt. #34. If anything, the letter supports a view that plaintiff's earlier conversation with Kuhl was about not going over Kuhl's head rather than how to file a grievance properly. The citation to plaintiff's brief confirms only that plaintiff knows about the grievance procedure *now*, as a result of litigation. Plt.'s Br., dkt. #6, at I.B. ("I am not naive to the fact that a formal procedure does exist in Steven Rowe's Ex. 1 of his affidavit."). Neither the letter nor the brief shows that plaintiff knew that he was required to follow a particular grievance procedure while he was incarcerated.

Because defendants have failed to show that plaintiff had an available administrative remedy, I cannot grant their motion for summary judgment on the ground that plaintiff failed to comply with § 1997e(a).

## B. Failure to Provide Medical Care

As a pretrial detainee plaintiff had a right to adequate medical care under the Fourteenth Amendment's due process clause. In determining whether this right has been violated, the court of appeals has held that the standard is the same as that under the Eighth Amendment: whether the defendants were "deliberately indifferent" to a "serious medical need." Murphy v. Walker, 51 F.3d 714 (7th Cir. 1995).

15

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder,  444 F.3d 579, 584 -85 (7th Cir. 2006).  The condition does not have to be life threatening.  Id.  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if otherwise subjects the detainee to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials were aware that the detainee needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

In the order screening plaintiff's complaint, I concluded that plaintiff had stated a claim upon which relief could be granted with respect to his claims that defendants had violated his right to adequate medical care by refusing to treat his Crohn's disease and vision impairment.  (Because plaintiff did not allege that defendant Suliene was aware of his vision

16

problems, I did not allow him to proceed against her on that claim.  I allowed plaintiff to proceed against defendants Darrell Kuhl and Steven Rowe on the theories that they failed to respond to plaintiff's medical complaints and failed to adequately train defendants Suliene and Christopher Kuhl.)   The question at this stage of the litigation is whether plaintiff has adduced enough evidence to permit a reasonable jury to find that he has satisfied the elements  of each of his claims with respect to each defendant.  Borello v. Allison,  446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett,  477 U.S. 317, 322-24 (1986).

1.  Dalia Suliene

Defendant Suliene knew that plaintiff had Crohn's disease as of May 22, the first day he was incarcerated at the Columbia County jail.  He told her of his diagnosis and she concedes that she did not question his report.  But this fact alone does not establish that plaintiff had a serious medical need or that Suliene was aware of such a need.  The facts show that Crohn's disease waxes and wanes and that treatment is not necessary when a patient has no symptoms.  Because plaintiff did not report any symptoms to Suliene on May 22, she was under no constitutional obligation to treat his condition at that time.  Williams v. Rodriguez,  No. 06-4126, – F.3d – , 2007 WL 4258679, *7 (7th Cir. Dec. 6, 2007) (arrestee with asthma did not have serious medical need when symptoms were not present

during relevant time).

The landscape changed after plaintiff wrote his July 7 letter to defendant Suliene, in which he complained that he was losing weight and having 10 to 20 bowel movements a day.  Although there is conflicting evidence regarding how much weight plaintiff lost, Suliene again admits that she accepted as true plaintiff's symptoms as he described them.  A reasonable jury could find that a person has a serious medical need when he has Crohn's disease and is experiencing the symptoms plaintiff described.  It does not take a medical expert to realize that the number of bowel movements plaintiff reported could lead to significant dehyradation and other health problems.  Gil v. Reed, 381 F.3d 649, 662 (7th Cir. 2004) (in determining whether condition is serious medical need "we need not check our common sense at the door"); cf. Roberson v. Bradshaw, 198 F.3d 645,647-48 (8th Cir. 1999) (serious medical need was obvious when prisoner experienced excessive urination, diarrhea, sweating, weight loss and dehydration related to known diabetes).

Plaintiff's symptoms were at least as serious as other conditions that the court of appeals has held or assumed could be sufficient to trigger Eighth Amendment protections. O'Malley v. Litscher, 465 F.3d 799, 805 (7th Cir. 2006) (minor burns resulting from lying in vomit); Greeno v. Daley, 414 F.3d 645, 649-51 (7th Cir. 2005) (heartburn and vomiting).  Other courts have held uniformly that active Crohn's disease may constitute a serious medical need.  E.g., Greening v. Fletcher, 2007 WL 2872120, *4 (E.D. Wash.

2007); Woulard v. Food Service, 294 F. Supp. 2d 596, 604 (D. Del. 2003); Balla v. Idaho

State Bd. of Corrections, 595 F. Supp. 1558, 1574-75 (D. Idaho 1984).

This leaves the question whether a jury could find that defendant Suliene disregarded plaintiff's need for treatment by failing to respond reasonably. It is undisputed that Suliene prescribed no treatment for plaintiff after she met with him on July 10. No response is not a reasonable response, at least in the absence of a good reason for failing to act.

Defendant Suliene says she has such a reason: plaintiff refused treatment because he did not want to pay for it. Under Columbia County jail policy, prisoners must pay for much of their own medical care. However, there is a qualification. If a prisoner does not have the funds to pay for the treatment, it must be provided anyway and the prisoner is billed for the care. According to Suliene she explained this policy to plaintiff and he made his own decision not to seek a prescription or blood tests.

As an initial matter, defendant Suliene's reliance on this policy does not necessarily account for her inaction, at least not entirely. It is undisputed that the blood tests were the only option Suliene offered plaintiff after the July 10 meeting. Although blood tests might have revealed the scope of plaintiff's disease, they would not have provided plaintiff with relief from his symptoms. She ignored his request to be placed on a special diet and did not prescribe or recommend any medication, even though it is undisputed that she knew after their July 10 meeting that he had been without it since May. (Defendants fault plaintiff for

19

failing to seek out nonprescription medications but plaintiff denies that he was aware of that option and defendants propose no facts that Suliene or anyone else told him that alternatives were available.)  She did not order that plaintiff's weight be monitored or schedule a follow up appointment.  When she learned a few days later that the Sauk County jail did not have records of plaintiff's blood tests, she did not tell plaintiff this or suggest an alternative course of treatment.  She did nothing until the day before plaintiff left the prison a few weeks later.

To the extent the policy is relevant, it does not get defendant Suliene very far because there are genuine issues of fact regarding whether she followed it.  The Court of Appeals for the Seventh Circuit has never considered the constitutionality of a policy that charges prisoners for medical care, but other courts have upheld them.  Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997) (Alito, J.)(citing cases).  The rationale is that the Constitution requires the government to provide necessary medical treatment, but does not require the to care be provided at no cost.  One difference between this case and Reynolds is that the policy at issue in that case imposed a modest co-payment of a few dollars for certain forms of treatment whereas the Columbia County jail imposes the *entire* cost of medical treatment on the prisoner.  This is likely to be a powerful disincentive for prisoners seeking necessary medical treatment.

Plaintiff does not challenge the constitutionality of the policy, so I need not consider

20

that issue.  Rather, plaintiff denies that Suliene followed it.  According to him, she told him he would not receive any treatment unless he paid up front, which meant he could not receive treatment at all because he could not afford it.  In addition, she told him that getting the blood tests were a "waste of money" anyway because they would not determine whether he had the disease.  If plaintiff's version is true, defendant Suliene may have violated plaintiff's right to medical care.  Although the government may charge prisoners for health care, it may not withhold care if a prisoner is unable to pay.  Reynolds, 128 F.3d at 174; Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985).  (In one case, the court extended this rule to prisoners who are "unwilling" to pay.  Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).)  Because this issue is genuinely disputed, I must deny defendant Suliene's motion for summary judgment.

2.  Christopher Kuhl

I come to the same conclusion regarding defendant Christopher Kuhl.  With respect to his Crohn's disease, plaintiff told Kuhl that he was experiencing "up to twenty stools per day" and "mind blowing pains in [his] stomach."  Again, this is sufficient to permit a reasonable jury to infer that Kuhl was aware that plaintiff had a serious medical need.  Although defendants speculate in their briefs regarding why plaintiff may not have been

21

accurately reporting his symptoms, these are arguments for the jury, not the court.  I must accept plaintiff's testimony that these were his symptoms.  In any event, defendants adduce no facts suggesting that defendant Kuhl did not believe plaintiff's complaints.

In arguing that defendant Kuhl responded reasonably to plaintiff's medical need, defendants point to Kuhl's discussions with the jail nurse and argue that he was entitled to defer to the nurse's judgment, citing Johnson v. Doughty, 433 F.3d 1001, 1010-11 (7th Cir. 2006) and Greeno, 414 F.3d at 656.  Greeno and Johnson do not help Kuhl because both of those cases involved the deference of an inmate complaint examiner to a doctor's judgment regarding the appropriate course of treatment.  In this case, Kuhl received no medical judgment to which he could defer.  The nurse did not  give Kuhl an opinion that plaintiff did not need treatment; she simply told him that plaintiff was not being treated. I cannot conclude that was sufficient as a matter of law to relieve defendant Kuhl of any further obligation.

With respect to vision problems, plaintiff told defendant Kuhl that he could not see without his glasses and that he "suffer[ed] from constant headaches from constantly straining all day long."  Although plaintiff's description of his symptoms was less than detailed, it is minimally adequate to show a genuine issue of fact. As noted by defendants, the Court of Appeals for the Seventh Circuit has not considered the extent to which a vision impairment constitutes a serious medical need, but I have concluded in previous cases that

22

prisoners may have a serious medical need for glasses.  E.g., Franklin v. McCaughtry, 02-C-618-C, 2004 WL 221982 (W.D. Wis. Feb. 3, 2004).  Serious medical needs extend to matters that "significantly affec[t] an individual's daily activities," Chance, 143 F.3d at 702, which would certainly include a person's ability to see.  Numerous other courts have recognized that the right to medical care includes the right to eye care and eyeglasses.  E.g., Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996); Mitchell v. Maynard, 80 F.3d 1433 (10th Cir. 1996); Harris v. O'Grady, 803 F. Supp. 1361, 1366 (N.D. Ill. 1992); Williams v. ICC Committee, 812 F. Supp. 1029 (N.D. Cal. 1992).

In any event, it is well established that prison officials must treat a prisoner's pain. Walker, 293 F.3d at 1040; Jones v. Simek,  193 F.3d 485, 490 (7th Cir. 1999); Cooper v. Casey,97 F.3d 914, 916-17 (7th Cir. 1996).  Defendants advance no argument why constant headaches as a result of impaired vision would not qualify under this rule.

Again, the parties dispute how defendant Kuhl responded to plaintiff's pleas for help. Kuhl says that he offered to pay for the glasses initially and then debit plaintiff's account. Plaintiff says that Kuhl refused to provide glasses unless plaintiff paid for them in advance. Because I must view the facts in the light most favorable to plaintiff, I cannot conclude as a matter of law that defendant Kuhl acted reasonably.

Finally, I consider defendant Kuhl's argument that he is entitled to qualified immunity because the Court of Appeals for the Seventh Circuit has not yet considered an

23

incarcerated person's right to treatment for Crohn's disease or a vision impairment.  This argument misunderstands the scope of qualified immunity.  Although pointing to a case directly on point is one way a plaintiff may overcome a defense of qualified immunity, Wilson v. Layne,  526 U.S. 603, 617 (1999), the Supreme Court and the court of appeals have made it clear that it is not the only way. Hope v. Pelzer, 536 U.S. 730, 741 (2002); McGreal v. Ostrov, 368 F.3d 657, 683 (7th Cir. 2004); Nabozny v. Podlesny, 92 F.3d 446, 456 (7th Cir. 1996) ("liability is not predicated upon the existence of a prior case that is directly on point").  If a reasonable  officer looking at the law as it existed at the time would know that his  conduct was unconstitutional, that is enough.

Notably, defendants fail to cite any cases in which a court held that a defendant was entitled to qualified immunity on a claim involving a failure to provide medical care to an incarcerated person.  The reason for this is explained by the court in Walker, 293 F.3d at 1037 (citations omitted):

> Under certain circumstances, such as those presented here, the two inquiries [with respect to the merits and qualified immunity]  effectively collapse into one. . . .[A] plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference.  If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity.

In this case, I have concluded that there are genuine issues of fact whether defendant Kuhl was aware that plaintiff needed medical treatment and whether Kuhl took reasonable

measures to respond to those needs.  Accordingly, I must deny defendants' motion for summary judgment with respect to defendant Christopher Kuhl.

### 3.  Darrell Kuhl and Steven Rowe

Plaintiff has failed to adduce any evidence that defendants Darrell Kuhl (the jail captain) and Steven Rowe (the sheriff) had any involvement in the failure to provide him with medical care, either directly or as a result of a failure to train the other defendants. Although government officials may be held liable under § 1983 for policies they enact or implement, Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986), plaintiff is not challenging any of defendants' policies for providing medical care.  Rather, he is alleging that defendants Christopher Kuhl and Suliene were *violating* jail policy when they denied him care.  Because plaintiff adduces no facts that the sheriff or the captain directed the other defendants to violate the policy or knew they were likely to do so, I must grant defendants' motion for summary judgment with respect to defendants Darrell Kuhl and Rowe.  Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995) ("An official satisfies the personal responsibility requirement of section 1983 . . .  if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.")

25

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendant Dalia Suliene is DENIED.

2.  The motion for summary judgment filed by defendants Steven Rowe, Darrell Kuhl and Christopher Kuhl is GRANTED with respect to Steven Rowe and Darrell Kuhl.  The complaint is DISMISSED as to those defendants.  The motion is DENIED with respect to Christopher Kuhl.

Entered this 10th day of January, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

27