IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RONALD ROMANELLI,

                  Plaintiff,                  OPINION AND
v.                                                            ORDER

DALIA SULIENE and CHRISTOPHER KUHL,        07-cv-19-slc

                  Defendants.

---

This is a prisoner civil rights lawsuit in which plaintiff, Ronald Romanelli, alleged that defendants, a Columbia County Jail sergeant and the jail physician, were deliberately indifferent to his serious medical needs related to his Crohn's disease and his missing eyeglasses. This court declined to find an attorney for Romanelli, so he tried his case pro se. The jury found in their special verdict that Romanelli's Crohn's disease and his missing eyeglasses were not serious medical conditions.[1] As a result of these findings, the jury was not required to answer any other special verdict questions.

Before the court is Romanelli's timely motion for a new trial filed pursuant to Rule 59(a), or alternatively for judgment notwithstanding the verdict. *See* dkt. 91. Romanelli has taken a shotgun approach, complaining that: (I) The jury erred when it found that his Crohn's disease was not a serious medical condition; (II) If Romanelli's Crohn's disease was a serious medical condition, then defendants were deliberately indifferent to it; (III) The court erred by ruling inadmissible evidence of Romanelli's symptoms and treatment after he left the Columbia County Jail; (IV) Romanelli would have won if he had had an attorney; (V) It was error to grant defendant Sgt. Christopher Kuhl's Rule 50 motion on the Crohn's disease claim; and (VI) The trial was infected by other errors that made it unfair, specifically, the defendants' attorney

---

[1] Romanelli does not challenge the jury's verdict against him on his eyeglasses claim so it fades into the background in these post-trial proceedings.

intentionally inflamed the jury by repeatedly mentioning Romanelli's criminal history, including his sexual assault conviction, the court should have excluded evidence of the sexual assault conviction, the court never told Romanelli that he could make arrangements for clothing other than a prison jumpsuit, it was unfair to have a correctional officer sit behind plaintiff while he was on the witness stand, and the court should not have interrupted plaintiff's presentation. *See* dkt. 91. Defendants oppose this motion in every respect. *See* dkt. 95. Romanelli filed a terse reply honing in on his Rule 609 claim, *see* dkt 96. Having carefully reviewed Romanelli's claims, I am denying his motion.

CASE OVERVIEW

This court originally assigned Romanelli's lawsuit to Chief District Judge Barbara Crabb, who, on March 13, 2007, granted Romanelli leave to proceed on claims under 42 U.S.C. §1983 regarding his medical treatment while he was detained pretrial at the Columbia County Jail. *See* dkt. 8. On March 26, 2007 and June 15, 2007, the court denied Romanelli's first and second motions for appointment of counsel, concluding that he was capable adequately of representing himself. *See* dkts. 10 and 26.

On January 10, 2008, the court granted in part and denied in part the defendants' motion for summary judgment. What remained were Romanelli's claims that defendants Dr. Dalia Suliene and Sergeant Christopher Kuhl were deliberately indifferent to his need for a replacement pair of eyeglasses and to his need for treatment of his Crohn's Disease. *See* dkt. 53. Trial to a jury remained set for March 17, 2008. The court's order set out the law that governed Romanelli's remaining claims, thus providing him with a roadmap for trial.

On February 4, 2008, Romanelli filed his third motion for appointment of counsel, *see* dkt. 57. Defendant Kuhl opposed the motion, accurately observing that plaintiff was

competently litigating the matter, had survived summary judgment, and had obtained the discovery necessary for trial. *See* dkt. 59. On February 12, 2008, this court denied Romanelli's request, specifically concluding that: Romanelli had represented himself competently so far; the fact Romanelli was taking antidepressants was not an issue so long as Romanelli continued to demonstrate sufficient competency to represent himself; and, the case was factually and legally straightforward. *See* dkt. 61.

Because of court calendar congestion, the parties consented to have the magistrate judge (that is, me) preside over their jury trial. Although Romanelli timely had received the court's detailed procedure on how to seek witness subpoenas for trial, he never sought leave to subpoena or to writ any witnesses for trial, nor did he in any fashion alert the court that he might wish to bring additional witnesses to trial.

On March 17, 2008, the morning of trial, I held a final pretrial conference with Romanelli and defendants. Romanelli, who was serving a state prison sentence following a conviction on the sexual assault charge that had been the basis for his pretrial detention in Columbia County, appeared in a prison jumpsuit, shackled and accompanied by two uniformed state correctional officers. Romanelli had never asked to wear street clothes in front of the jury. In any event and as is this court's regular practice, *sua sponte* I ordered the correctional officers to remove Romanelli's shackles in order to minimize any juror inference that Romanelli was a dangerous man.

At the final hearing, defendants moved pursuant to F.R. Ev. 609 to impeach Romanelli with his prior felony and misdemeanor convictions if he testified. Romanelli opposed the motion. I granted the motion in part and denied it in part: I allowed defendants to use Romanelli's felony convictions for sexual assault and bail jumping, since it was obvious that Romanelli was imprisoned and under guard. I allowed defendants to use Romanelli's

3

misdemeanor convictions for issuing worthless checks because they involved an element of dishonesty.  I forbade defendants to impeach Romanelli with his convictions for resisting/obstructing an officer or failure to report as a sex offender because the probative value of this evidence was outweighed by the potential for unfair prejudice.  It did not occur to me at that time to ask Romanelli if he understood that defendants were limited to eliciting the nature of his convictions and their dates; neither did Romanelli ask for clarification.

At the final hearing, I denied Romanelli's request to tell the jury about the treatment he had received from health care professionals at other institutions after he was transferred from the Columbia County Jail.  Absent an explanation from a qualified decision-maker and treatment provider who was available to be cross-examined by defendants, Romanelli's report about how he was treated later at another institution was only marginally relevant the potential to confuse and mislead the jury.

After an uneventful jury selection, the court read the usual series of introductory instructions to the jury, including pattern instructions on determining witness credibility:

> A witness may be discredited by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.
>
> If you believe any witness has been discredited, it is up to you to decide how much of the testimony of that witness you believe.
>
> If a witness is shown to have given false testimony knowingly, that is, voluntarily and intentionally, about any important matter, you have a right to distrust the witness's testimony about other matters.  You may reject all the testimony of that witness or you may choose to believe some or all of it.

Romanelli made his opening statement.  Romanelli was clever enough to deduce the tactic of "Rule 609 inoculation" by fronting his convictions with the jury before the defendants could

confront him with his record. Unfortunately, he was too clever by half: he explained at great length his version of the facts underlying the sexual assault conviction.[2]

During his case in chief, Romanelli narrated at length his version of what had transpired during his stay at the jail. Romanelli testified from the witness stand, which is about eight feet northwest of the jury box. During Romanelli's testimony one of the two state correctional officers sat in a chair near the corner of the courtroom south of Romanelli and west of the jury, visible to jurors if they looked to their left and behind, but out of their sight line. Defendants' attorneys did not interrupt the flow with objections and the court did not hold Romanelli strictly to the evidentiary rules. Romanelli presented and used a number of documents as exhibits. The court clerk operated the electronic evidence presentation system for Romanelli at his direction. The court and defendants' attorneys took a relaxed approach to Romanelli's use of exhibits in order to allow him to present his version of events without unnecessary interruption. When the court made rulings, I usually explained them to Romanelli. As the trial progressed and Romanelli began repeating himself, sometimes at great length, I would occasionally point this out to him and ask him to move on or to finish up. At all times, the court, the parties, the attorneys and the witnesses addressed each other in a relaxed and cordial fashion. In other words, although there were two correctional officers in the courtroom, all of

---

[2] The gist of Romanelli's explanation was that his victim falsely had accused him of sexual assault following consensual sex. According to Romanelli, this woman's motivation falsely to accuse him was that Romanelli had verbally abused her and tossed her unceremoniously from his abode so that she would not be present when the mother of his children came to visit. Scorned and humiliated, the victim called the police to claim sexual assault. Romanelli admitted that eventually he entered either a no contest or an *Alford* plea to the charge.

the other visual and verbal cues to the jury were that it was not necessary closely to monitor and guard Romanelli.

The heart of Romanelli's case was his testimony, a long, thorough–and often repetitive–version of events in which he claimed that while he was detained at the Columbia County jail he suffered from repetitive, debilitating bouts of diarrhea, but that Dr. Suliene did not believe him, refused to provide necessary treatment and declined to perform lab tests unless he paid for them up front. Romanelli also claimed that Sgt. Kuhl had not responded adequately to his complaints regarding Crohn's disease.

On cross-examination Romanelli acknowledged that he had not complained in writing about his Crohn's disease from May 22, 2006 to July 7, 2006, and that his formal complaints occurred during an 11-day period from July 7 to July 18, 2006 when he was transferred to another facility. Romanelli conceded that Dr. Suliene and the jail nurse, Larry McFarlane, had seen him several times regarding his complaints; Romanelli, however, was unhappy with their diagnosis that he was in no apparent distress.

Also during cross-examination, defendants impeached Romanelli with numerous inconsistencies between his trial testimony his prior written and oral statements and documents in evidence prepared by others. Later in their own case, defendants were able to establish that many of Romanelli's statements during his testimony were inconsistent with the testimony of other witnesses, including the defendants and other jail staff. The details of some of this impeachment is outlined in the defendants's response, dkt. 95 at 3-5, and I will not repeat them here. The point is that there was evidence contradicting every major premise that Romanelli

offered in his testimony and there were numerous points on which Romanelli was caught in inconsistencies that reasonably could have been viewed as self-serving and intentional.

As part of his case in chief Romanelli also called as witnesses the defendants and some other jail staffers. He did not present any other witnesses who could have corroborated parts of his version of events.

After plaintiff rested, I denied defendants' Rule 50(a)(1) motions for judgment as a matter of law.

Defendants then presented their case. Sgt. Kuhl testified, without impeachment or contradiction from Romanelli, that every time Romanelli sent him a message complaining about his Crohn's disease and his treatment in the jail, Sgt. Kuhl promptly responded, either by following up directly with Romanelli or by investigating Romanelli's complaint with medical staff. When medical staff confirmed that they were aware of Romanelli's complaints and had responded or were responding to them, Sgt. Kuhl stood down.

Dr. Suliene and jail nurse McFarlane both testified that they promptly examined Romanelli several times regarding his complaints about Crohn's disease and determined each time that Romanelli currently was not in any distress that would require treatment. In response to questions both from her own attorney and from Romanelli, Dr. Suliene explained what Crohn's disease is and what sorts of signs and symptoms can result from it when it is active. Dr. Suliene testified that she was familiar with Crohn's disease and other gastrointestinal illnesses, that she knew how to determine when a patient was suffering from Crohn's disease, and that although Romanelli complained to her of severe symptoms, every time she saw him–on May 22, July 10 and August 2, 2006–she found him to be healthy, vital, well-hydrated and pain-free.

Plaintiff actually gained weight between his examinations.  In Dr. Sulien's opinion, Romanelli's Crohn's disease was in remission during his stay at the Columbia County Jail.

Dr. Suliene testified that Romanelli asked her to prescribe double food rations.  She declined because the jail menu provided enough calories for Romanelli to obtain adequate nutrition on regular rations even if he self-selected which foods to eat.  Nurse McFarlane, who concurred in Dr. Suliene's diagnosis and treatment regimen, testified that it is common in the jail for inmates to seek medical staff intervention for the purpose of obtaining more food or a second mattress on which to sleep.

As defendants point out in their response, Romanelli did not complain about his Crohn's disease for over a month, was offered the opportunity to obtain lab testing but refused when he found out that his jail account would be charged for the blood work (while continuing to use his jail account to buy spicy food from the jail's commissary), never asked any relative to obtain his medicine from home, never bought pain killers or stomach medicine from the jail canteen despite daily opportunities to do so, and, according to jail records, gained a pound despite his complaints of debilitating diarrhea.

At the close of the evidence I granted Sgt. Kuhl's motion to dismiss Romanelli's claim against him regarding Crohn's disease.  The rest of the case went to the jury, which quickly returned a special verdict finding that neither Romanelli's Crohn's disease nor his need for eyeglasses constituted a "serious medical condition."  As a result of these two findings, which were the first questions on the form, the jury did not have to answer any other questions regarding defendants' state of mind or regarding damages.

OPINION

In response to a Rule 59(a) motion, a court should grant a new trial only when the record shows that the jury's verdict resulted in a miscarriage of justice or when the verdict, on the record, cries out to be overturned or shocks the court's conscience. *Davis v. Dept. of Corrections*, 445 F.3d 971, 979 (7th Cir. 2006). In cases involving simple issues but highly disputed facts, greater deference should be afforded the jury's verdict than in cases involving complex issues with facts not highly disputed. *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995). As the court stated in *Carter v. Chicago Police Officers*, 165 F.3d 1071 (7th Cir. 1998),

> We will not set aside a jury verdict if a reasonable basis exists in the record to support that verdict. The evidence must be viewed in the light most favorable to the prevailing party and issues of credibility and weight of evidence are within the purview of the jury.

*Id.* at 979, citation omitted.

With these principles in mind, I will address each of Romanelli's contentions in his motion.

### I. Was Romanelli's Crohn's disease a serious medical condition?

Romanelli points to his own testimony and his letters to jail staff to support his position that his Crohn's disease was a serious medical condition. Dr. Suliene and Nurse McFarlane testified that they repeatedly examined and monitored Romanelli, and in their professional opinions, Romanelli's Crohn's disease was not a serious medical condition during his stay at the jail. Their testimony alone, without reference to any of the impeachment material that discredited Romanelli, provides ample support for the jury's answer to the first special verdict question. It is almost pointless for Romanelli to argue otherwise. That said, there was objective

corroboration of Suliene and McFarlane's testimony from other jail staff who did not observe Romanelli to be in any apparent distress, plus the jail's commissary records, which show that Romanelli never ordered pain or stomach medication, yet he did order spicy food to supplement his prison diet.  There also was evidence that Romanelli declined to allow the jail to perform blood tests because he did not want his jail account debited.

In short, there is ample support for the jury's verdict without even considering whether the jury found Romanelli to be a credible witness.  Even if the jury were to have believed everything that Romanelli said, there was evidence to support the verdict that Romanelli had not proved by a preponderance of the evidence that he was suffering from a serious medical condition while detained at the jail.[3]  It was eminently reasonable for the jury to accept the testimony of the medical professionals over the patient.  This is not a basis to retry this case.

### II. Were defendants deliberately indifferent to Romanelli's serious medical condition?

The jury found that Romanelli did not have a serious medical condition.  Therefore, the jury was not required to weigh in on this contention.  As noted in Section I, the jury's decision on question 1 was reasonable.  Therefore, Romanelli's second point is academic.

For what it's worth, it was Romanelli's burden to prove by a preponderance of the evidence that the defendants possessed a subjectively culpable state of mind, that is, a disregard of a known substantial risk of harm.  *See Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).  Medical malpractice is not enough, let alone a prisoner's personal disagreement with a

---

[3] In Section VI I address Romanelli's various complaints about how the court's rulings unfairly made him appear less credible and therefore affected the outcome of his lawsuit.

10

doctor's medical judgment. To prevail, it was Romanelli's burden to prove that Dr. Suliene's treatment of his complaints was so blatantly inappropriate as to evidence intentional mistreatment likely seriously to aggravate a medical condition. *Id.* at 831. No evidence in the record suggests that anything this egregious occurred. Romanelli's fervent displeasure with Dr. Suleine's conservative course of treatment does not render it blatantly and intentionally inappropriate.

### III. Did the court err by excluding evidence of Romanelli's treatment after he left the jail?

If a qualified expert had offered an opinion challenging Dr. Suliene's approach, perhaps Romanelli's complaints might have more traction. Toward that end, evidence about what diagnosis and treatment Romanelli received for his Crohn's disease after leaving the Columbia County Jail had the potential to be highly relevant to how Dr. Suliene treated him. But such a medical diagnosis and treatment require specialized scientific knowledge; as a result they are admissible only if sufficient facts underlie them and these facts were derived by means of reliable principles and methods. *See* F.R. Ev. 702. For Romanelli to synopsize what some other treatment professional did for him on a later date would not meet the standards of Rule 702 and likely would involve large doses of hearsay.

Even if Romanelli were to have reported only what was done to him, it would have been misleading and confusing to the jury in the absence of a complete presentation of what happened and why from someone who could explain the process and the rationale. By way of example only, if there was a subsequent change in treatment, was it based on a disagreement with Dr. Suliene's treatment, did it result from objective, observable changes in Romanelli's

11

signs and symptoms, or was it simply a path of least resistance by a busy prison commissary? Would a subsequent treatment provider opine that Romanelli had a serious medical condition or merely that he had a condition that might benefit from medication? Absent the presence of a witness qualified to answer questions like these, the sort of evidence that Romanelli wished to introduce was not admissible. Romanelli had the opportunity to gather admissible evidence on this point but chose not to. I see no reason to change the court's ruling on this point.

IV.   **Could an attorney have changed the outcome?**

Section III segues nicely into Section IV: surely an attorney would have dotted the "i"s and crossed the "t"s on obtaining admissible evidence from subsequent treatment providers or from independent experts. But throughout pretrial and trial proceedings Romanelli established that he had the ability to litigate this rather straightforward case himself and that he was capable of gathering admissible evidence for trial. *See, e.g., Hammer v. Ashcroft*, 512 F.3d 961, 971 (7th Cir. 2008). Three times this court made an informed and reasonable decision that Romanelli could handle trial on his own. The fact that Romanelli ultimately lost at trial–even assuming, *arguendo*, because of his own mistakes–will not call into question the propriety of the court's decision to deny him counsel. *Pruitt v. Mote*, 503 F.3d 647, 666 (7th Cir. 2007) (*en banc*, Rovner, Ripple, Wood and Williams, concurring). Having seen and heard Romanelli's performance at trial, I have no doubt that he was sufficiently intelligent, literate, articulate, tenacious and assertive adequately to represent himself.

Indisputably Romanelli blundered several times at trial, but his blunders were not material. It is unadulterated speculation to predict that Romanelli could have won this case if

only he would have been represented by an attorney. As noted above, the medically trained professionals at the jail were unwavering in their testimony that Romanelli was not suffering from any debilitating symptoms when they saw him, and there was credible evidence that Romanelli gained weight, continued to eat spicy food, failed to obtain his medication from home, failed to authorize additional testing, and failed to purchase OTC pain or stomach medicine. Additionally, the fact that Dr. Suliene examined Romanelli every time he asked for an appointment suggests that she was not deliberately indifferent to Romanelli's complaints. The jury's verdict speaks for itself and on this record is presumed correct, but as a neutral observer of the entire trial, I cannot imagine a realistic scenario in which Romanelli could have prevailed.

**V. Did the court err by Granting Sgt. Kuhl's Rule 50 Motion?**

Romanelli's response to the last sentence in the preceding section probably would be perfervid disagreement. Romanelli not only is articulate, assertive and tenacious, but also very opinionated.

At the close of the evidence at trial, there was no dispute that every time Romanelli complained to Sgt. Kuhl about his Crohn's disease or the way medical staff was handling it, Sgt. Kuhl immediately addressed Romanelli's concerns, either with Romanelli or with medical staff. I concluded that after referring Romanelli to medical staff and obtaining their assurance that they were dealing with Romanelli's condition, on this short time line there was nothing more that Sgt. Kuhl reasonably should have been expected to do. *See Greeno v. Daley*, 414 F.3d 645, 655-56 (7th cir. 2005) (prison complaint examiner's failure to take further action once he has

13

referred the matter to medical provider cannot be viewed as deliberate indifference). This was the appropriate decision at the time and it remains appropriate now.

It would be more accurate in the post-trial context to dispose of this particular complaint by observing that it has become academic in light of the jury's verdict. Because the jury found that Romanelli was not suffering from a serious medical condition, Sgt. Kuhl could not have violated Romanelli's constitutional rights even if he had deliberately ignored Romanelli's complaints. But Sgt. Kuhl performed with the dispatch and compassion that one would expect from a good jail supervisory officer. Romanelli is not entitled to a new trial in order to take another swing at Sgt. Kuhl.

VI. **Did other errors render this trial unfair?**

Finally, Romanelli contends that several other trial occurrences rendered his trial unfair, entitling him to a mulligan. Unarguably, certain events could have transpired in a manner more favorable to Romanelli, but they do not, singly or collectively, rise to the level of reversible error. The theme running through Romanelli's complaints is that avoidable things occurred that made him a less credible witness. Romanelli has at least two problems: many of these avoidable things were within his power to avoid; apart from this, none of them was so critical to the jury's credibility determination as to call into question its verdict against Romanelli.

Let's start with Romanelli's complaints about officer placement and his orange jumpsuit. Romanelli's assertion that the jury deemed him less trustworthy because a correctional officer sat near him while he testified constitutes grasping at straws. Neither the Wisconsin Department of Corrections nor this court's own security staff would have permitted Romanelli,

14

an imprisoned felon, to appear in court without correctional officers present. Therefore, there was no way that Romanelli could have hidden the fact of his incarceration from the jury. Perhaps a shirt and tie would have drawn less attention to this fact than a jumpsuit, but this did not create prejudicial error. The Western District does not have a policy or procedure alerting prisoners that they may appear in street clothes during trial. Perhaps such a policy would be a good idea, perhaps not, but it has not been proposed or discussed by the entities with a stake in the outcome. If Romanelli had *asked* to appear in street clothes, the court would have considered and ruled on the request under the totality of circumstances. But Romanelli never asked. He cannot now obtain a new trial in order to raise this issue for the first time.

In any event, as defendants note, Romanelli was allowed to walk freely about the courtroom. When he testified, he sat unrestrained within feet of the jurors, with a correctional officer seated unobtrusively in the nearby corner. Court staff provided assistance to Romanelli, walking to and fro through the courtroom within his reach. I stood with Romanelli (and defendants' attorney) at sidebar during jury selection and we conferred within inches of each other. The message to the jury was that although Romanelli might be in prison, nobody was scared of him or treating him as a dangerous or untrustworthy person.

Romanelli's next complaint is that the court should have excluded evidence of his sexual assault conviction as an impeachment point. Rule 609(a) requires a balancing test under Rule 403; I granted the defendants' request to impeach Romanelli with the crime for which he currently was incarcerated, since as just noted, the jury was aware that Romanelli was imprisoned. Even if this evidence should have been excluded, the jury's knowledge of Romanelli's sexual assault conviction could not have been outcome determinative. Although it

15

was unnecessary for Romanelli to provide so much background, this detail reined in any prurient speculation by the jury. More to the point at the Rule 59(a) phase, this conviction was just one small datum in a sea of information about Romanelli's credibility and it was specifically ameliorated by a jury instruction at the close of the case. Additionally, and as noted above, it was possible for the jury to deem Romanelli generally a credible witness but still to find against him on the first verdict question because trained medical professionals disagreed with him about whether his Crohn's disease presented a serious condition during his jail stay. In short, perhaps the fact that Romanelli was imprisoned because of a sexual assault conviction was evidence that the jury should not have heard, but it does not rise to the level of requiring a new trial.

  Finally, Romanelli complains that the court occasionally interrupted his presentation to inquire about timing and to provide scheduling input. This is a judge's obligation during a jury trial, particularly for litigants–or trial attorneys–whose previous time predictions have proven inaccurate. The few interruptions were reasonable and polite. The jury received the standard jury instruction that the court took no position on the case. This is not a basis for a new trial.

## CONCLUSION

  As previously noted, Romanelli is an intelligent, articulate, motivated and tenacious man. He feels very strongly about what he views as inadequate medical treatment at the Columbia County jail. Romanelli got his day in court and the jury quickly and decisively found against him and in favor of the defendants. This outcome displeases Romanelli, but it is a logical, reasonable verdict after a fair trial. There is no need to repeat the exercise.

ORDER

It is ORDERED that plaintiff Ronald Romanelli's motion for a new trial under Rule 59(a) is DENIED.

Entered this 16th day of June, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge